## CIRCUIT COURT OF THE CITY OF ROANOKE

In re Estate of
Oveta Clark Martin

April 5, 2005

Case No. CH05-59

BY JUDGE CHARLES N. DORSEY

This is a petition seeking the advice and guidance of the Court in the administration of an estate, specifically pertaining to interpretation of certain language in the will. For the reasons stated, the will is construed to include Mr. John Weber's clients in the distribution.

*Issue*

In a residuary clause in a will, what effect does the language "to my children surviving at my death *per stirpes*" have when one adult child predeceases the testatrix, leaving descendants?

*Facts*

The testatrix in this matter passed away in 2004. Her will was shortly thereafter probated in this Court. At the time of her death, the testatrix had been predeceased by her husband. The couple had four adult children living at the time of her execution of the will. Significantly, though it is not contained in pleadings, the evidence proves that she had two other children who passed away as infants, prior to her execution of the will. Subsequent to her execution of the will, one of her adult children also predeceased her, leaving two children, the grandchildren of the testatrix.

The will in question states that, "the rest, residue, and remainder of my estate be divided equally between my children surviving at my death *per stirpes*." The executor interprets this language to mean that only the surviving children are entitled to take under the will. Counsel for the

grandchildren takes this language to mean that they take the share of the deceased adult child, their father, *per stirpes*.

*Analysis*

No case law authority has been cited by either party. The analysis and instruction contained in *Baliles v. Miller*, 231 Va. 48, 340 S.E.2d 805 (1986), provides the structure for interpreting the will provision in question.

The language in question is clearly ambiguous. Were the language plain and unambiguous, extrinsic evidence would not be admissible to contradict or alter its meaning. *Id*. at 57-58, 340 S.E.2d at 810-11.

Conversely, extrinsic evidence of facts and circumstances, including the state of the testatrix's family and property, her relations, her opinions, her hopes and fears, her habits of thought and of language, are always admissible when there are ambiguities in the language of the will. *Id*.

Additionally, when there is an "equivocation" in the words of the will so that the words describe, equally well, two or more persons, the Court is permitted to consider extrinsic statements by a testatrix as to her actual testamentary intent. *Id.*, 340 S.E.2d at 811. The language at issue clearly constitutes an "equivocation" and the Court has considered evidence of the actual testamentary intent of the testatrix. The *Baliles* court also abolished the historic distinction between patent and latent ambiguities in the context of extrinsic evidence.

In this case, the petitioners, seeking the advice and guidance of the Court, opted not to introduce any extrinsic evidence. Mr. Weber's clients, being the two grandchildren of the testatrix, both testified. The testatrix was an exceptional woman who had served as treasurer of her church. One of the grandsons had lived with her for a long time while growing up and later was called upon by his grandmother to help with questions and problems that she was having. He also mowed her grass and plowed her garden. The other grandson spent a lot of time with his grandmother and she let him help her count money from the church collection. The testatrix and her husband had served as caretakers for Fairview Cemetery. The deceased adult child, the father of the grandchildren in question, worked closely with his father, the predeceased husband of the testatrix, helping out with tasks associated with the care of the cemetery. Upon the death of their father, both of the grandsons maintained a close relationship with their grandmother. In addition to this general testimony, there are three specific portions of testimony that have been helpful in interpreting the

60

language in question. First, as earlier mentioned, the testatrix had two other children who passed away in infancy, prior to her execution to the will in question. Secondly, one of the grandsons testified that his grandmother had explicitly expressed to him that he and his brother would "split" their father's share and that she had a will to take care of that. Third, the other grandson testified that his grandmother had been quite upset about another family situation where the children had not inherited the share of the parent and she had spoken to him about that at length after his father's death, stating that result would not happen in her situation due to the way she had prepared her will.

The will was executed in 1980, and the testatrix passed away in 2004. In addition to the language at issue in this case, there is other language which precedes it in the will stating that "the names of our children who are now living are. . . ." The names of four adult children are set out thereafter. Due to two children, at that time, having already predeceased the testatrix, this provision would understandably have been placed in the will. The next article in the will contains the questioned language here, stating that the "rest, residue, and remainder of my estate be divided equally between my children surviving at my death *per stirpes*." Though not skillfully phrased, these two provisions of the will, read together, seem to indicate the intent of the testatrix to first, specify her children then living and thereby exclude the children who had predeceased her and, second, make clear that of those children "surviving at my death" the estate be divided evenly, *per stirpes*, leaving the share of the predeceased parent to any remaining issue. Va. Code § 64.1-3 defines the meaning of *per stirpes*.

Finally, of course, there is the uncontroverted extrinsic evidence that the testatrix specifically intended this result. Having had the opportunity to hear and observe the witnesses, there was no hint or suggestion of avarice in the testimony of either. Though they obviously had the inherent bias of potentially gaining from their testimony, their testimony and demeanor was straightforward, without rancor or obvious bias toward any other party to this proceeding, and all of their testimony was directed more to their pride in their grandmother then to any potential gain.

As stated, I consequently find that the language in question constitutes an equivocation and the Court may consider extrinsic evidence of the intent of the testatrix in determining its meaning. Having considered that extrinsic evidence and weighing that testimony, the Court further finds that the two grandchildren of the testatrix, represented by Mr. Weber, are to share the ¼ share of their parent so that each of Mr.

Weber's clients receives ⅛ of the estate. Understanding that real property in this case has already been conveyed, there certainly should not be any further conflict and the Court directs all parties to cooperate in executing necessary documents to effectuate this ruling.